

# THE ATTORNEY GENERAL
## OF TEXAS

**JIM MATTOX**
**ATTORNEY GENERAL**

March 19, 1990

Honorable Wilhelmina Delco
Chairman
Higher Education Committee
Texas House of Representatives
P. O. Box 2910, Office 413-C
Austin, Texas    78769-2910

Opinion No.  JM-1146

Re:  Authority of a university to allocate space in a campus building to be used exclusively by a private group of faculty members (RQ-1845)

Dear Representative Delco:

You ask whether Texas A & M University may allocate space in a campus building to be used exclusively for an auxiliary enterprise of the university known as the Faculty Club (hereinafter the club). The primary question is whether such an arrangement is constitutional. This question was previously asked of this office, but the request was withdrawn prior to the issuance of an opinion. Attorney General Opinion Request RQ-1407 (1988). Since that original opinion request, the operation of the club has changed considerably with the university assuming more responsibility.

We have separately received a brief from the university system explaining the operation of the club and its relationship with the university. The brief informs us that the club is now being operated as an auxiliary enterprise of Texas A & M University. The vice president for finance and administration of Texas A & M University administers the club, and university employees staff it. The brief further states that a nonprofit corporation provides bar services to the faculty club and uses the bar receipts to purchase bar supplies and to reimburse the university for its administration of the faculty club. The vice president directs the payment of expenses of the corporation.

The club serves its members and their guests as well as visiting professors, former students, parents, friends and others. However, visitors (who we understand to be non-members) may not make reservations but are accommodated only as space permits.

With that understanding of the club, we must look at the controlling law. Governance of A & M University and the A & M University System is vested in the board of regents. Educ. Code §§ 85.11, 86.02. Section 85.21 of the Education Code generally establishes the authority of the board as follows:

> The board shall make bylaws, rules, and regulations it deems necessary and proper for the government of the university system and its institutions, agencies, and services. The board shall regulate the course of study and prescribe the course of discipline necessary to enforce the faithful discharge of the duties of the officers, faculty, and students.

Those Education Code provisions generally vest the board of regents with the power to manage and control university property. See Splawn v. Woodard, 287 S.W. 677 (Tex. Civ. App. - Austin 1926, no writ). The board of regents has delegated its responsibility for the management and control of university property to the chief executive officer of each part of the system. Texas A & M University System, Administrative Policy and Reporting Manual § C.11.2 (April 25, 1989).

While we find no express authority for the university system to operate auxiliary enterprises, we believe that the university is authorized to operate such non-educational facilities. See Educ. Code §§ 51.008(b), 61.003(14); Attorney General Opinions H-513 (1975); H-456 (1974); LA-6 (1973). Furthermore, a faculty club fits within the parameters of "auxiliary enterprises" indicated by the examples listed in section 61.003(14), which reads as follows:

> 'Educational and general buildings and facilities' means buildings and facilities essential to or commonly associated with teaching, research, or the preservation of knowledge, including the proportional share used for those activities in any building or facility used jointly with auxiliary enterprises. Excluded are auxiliary enterprise buildings and facilities, including but not limited to dormitories, cafeterias, student union buildings, stadiums, and alumni centers, used solely for those purposes.

The faculty club under consideration here is very similar to the student food cooperative addressed in Attorney General Opinion H-513. In that opinion, this office determined that a state university, with the approval of the governing board, was authorized either to house and supply a private food coop or to operate one as an auxiliary enterprise. Attorney General Opinion H-513 (1975).

The governing board of the A & M University System apparently has not given direct approval for the operation of the faculty club. However, the board has indirectly approved the club in its adoption of the university budget, which includes a separate line item for the club. We believe that the regent's inclusion of club expenses in the university budget is tantamount to approval by the regents of the operation of the club. It is our further opinion that the regents may delegate responsibilities for administration of the club to university officers. The court in Bache Halsey Stuart Shields, Inc. v. University of Houston, 638 S.W.2d 920 (Tex. App. - Houston [1st Dist.] 1982, writ ref'd n.r.e.) examined sections of the Education Code relative to the power of the board of regents of the University of Houston. Those provisions were very similar to the sections cited above relative to the board of regents of the A & M University System. The court addressed the issue of whether the board of regents was authorized to delegate some of its duties to university officers and found that, inasmuch as the board of regents had a certain power, it also had the power to delegate "the details of management to a President and other officers." Id. at 926. The court noted:

> By enacting the above mentioned sections, the Legislature obviously contemplated that the Board could not run a large University without a great deal of aid from individuals intimately familiar with the details of the University on a day to day basis. The Board has been given the authority to delegate the actual running of the University and to select people qualified to do so, and has been authorized to retain power of approval, power to hire, and power to fire, should the employees not perform adequately.

Id. at 927.

For the above reasons, we believe that Texas A & M University is authorized to operate a faculty club as an auxiliary enterprise of the university.

We understand that your principle concern is that this allocation of university property might contravene article III, section 51, of the Texas Constitution, which provides in part as follows:

> The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever.

While the terms of that section appear to prohibit only grants of money, the provision has been construed to prohibit the grant of any public property without the receipt of an adequate quid pro quo. Dodson v. Marshall, 118 S.W.2d 621 (Tex. Civ. App. - Waco 1938, writ dism'd); Attorney General Opinions JM-551 (1986); MW-89 (1979); WW-790 (1960).

We do not think that use of university funds, property, or staff for the club is necessarily prohibited by article III, section 51. If it is determined that the operation of the club furthers university purposes, for example by enhancing faculty relations or by helping to attract more qualified faculty members, and that such quid pro quo is proportionate to the club's use of public funds, property, or staff, then we think that article III, section 51 is no obstacle to its operation. The board of regents has apparently made such determination, in the first instance, by implicitly approving the club's operation when it approved an item for the club's expenses in the university budget.

Whether the university receives an adequate quid pro quo for the club's use of public property and funds ultimately involves questions of fact. We think that this determination is for the regents in the first instance.

We assume, for the purposes of this opinion, that other legal requirements have been met. See, e.g., V.T.C.S. art. 6252-5c (corporation performing an auxiliary enterprise service must present a financial statement, provide payment statements, and execute a bond payable to the state); id. art. 6252-11f (state agencies must enact rules governing the relationship between the agency and "a private organization

designed to further the purposes and duties of the agency");
Educ. Code § 61.0572 (coordinating board approval of space
utilization in all educational and general buildings).

### S U M M A R Y

The operation of a faculty club as an
auxiliary enterprise of Texas A & M University does not violate article III, section
51, of the Texas Constitution as long as it
serves a public purpose or the university
receives an adequate quid pro quo.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen C. Gladney
Assistant Attorney General